IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRAMELL TROTT,

       Plaintiff,

  v.

CORPORAL NATHANIEL PAYTON,

       Defendant.

: Civil Action No. 18-478-CFC

---

Tramell Trott, James T. Vaughn Correctional Center, Smyrna, Delaware.   Pro Se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendant.

**MEMORANDUM OPINION**

November 3, 2020
Wilmington, Delaware

*[signature]*
**CONNOLLY, U.S. District Judge:**

Pending before me is Defendant Nathaniel Payton's motion for summary judgment on the sole claim remaining in this lawsuit. The claim was filed pursuant to 42 U.S.C. § 1983 by Plaintiff Trammell Trott, an inmate at the James T. Vaughn Correctional Center (JTVCC) in Smyrna, Delaware. Trott, who proceeds *pro se*, alleges that Payton, a correctional officer, subjected him to excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. More specifically, Trott alleges in his Complaint that Payton "came to my cell to secure me" in handcuffs on February 19, 2018 and, in doing so, "grabbed my wrist and 'banged' it forcefully on the side of [a] steel/metal prison cell door" and then "yanked my shoulder so my head would 'jerk' while I was pinned against the door." D.I. 3 at 5.

## I. BACKGROUND

The fact that Trott was handcuffed on February 19th in Building 19 of the JTVCC and the facts that led to his being handcuffed are not in dispute.

Payton, who is employed by the Delaware Department of Correction (DOC), D.I. 36-1 at 5, held the rank of corporal on February 19th and was a member of the DOC's Corrections Emergency Response Team (CERT), a specially trained tactical unit. D.I. 36-1 at 5. Around 8:00 p.m. that evening, Payton was ordered

1

by the CERT's commanding officer, Captain Eric Lehman, to retrieve a pepper ball launcher and respond along with other CERT officers to a reported Code 3 (i.e., major) disturbance in Tier C of Building 19. *Id.* at 6, 10. Trott was housed in Tier C at the time. D.I. 38.

When the CERT team arrived at Building 19, Lehman was informed by housing staff officers that several inmates in Tier C had failed to "lock in," that is, return to their respective cells after a "Code Red" alarm had been issued that required all inmates to lock into their cells for a mandatory headcount. D.I. 36-1 at 10–11. Because of that failure, the housing staff officers had vacated Tier C and initiated the Code 3 alert.

At Lehman's order, someone slightly opened the metal "slider" door that separated the housing unit from the adjacent alcove where the CERT team was positioned. *Id.* at 11. Video cameras recorded what followed. *Id.* at 12; D.I. 38. Four inmates, including Trott, were standing outside their locked cells on the unit's second floor. D.I. 38. In a loud but calm voice, Payton stated through the door's opening: "Inmates, lock in." D.I. 38; D.I. 36-1 at 11; D.I. 36-2 at 47, 48. The inmates responded that their cell doors were locked. Payton then replied, "Alright, come on down then. You guys gotta get cuffed up." D.I. 38.

2

The inmates complied with this order and began to walk down the stairs. As they did so, they questioned out loud why they had been told to lock into their cells when the cells were already locked, thus preventing them from entering the cells. Payton responded: "I don't know exactly what happened. I just came running over here. You guys are locked out. We'll go through the investigations process." *Id.* When the inmates reached the first floor, they were instructed to approach the slider door one-at-a-time and to face away from the door with their hands behind their backs so that they could be cuffed. D.I. 38; D.I. 36-1 at 6, 11.

The parties dispute what happened when Trott took his turn to back into the slider door. Although Trott averred in his Complaint that Payton had banged Trott's wrist against Trott's cell door and pinned Trott to his cell door, D.I. 3 at 5, Trott testified under oath at his deposition that Payton had handcuffed him at the slider door, caused Trott's wrist to hit the slider door, and "threw," "slammed," and "pinned" Trott against the alcove's walls and window. D.I. 36-2 at 49, 52, 62, 124, 210, 212–16) Trott insisted at his deposition that he "knew exactly who Payton is," *id.* at 48, and that it was Payton who handcuffed him, *id.* at 47, 49, 52, 55, 56, 63.

3

Payton and Lehman tell a very different story. They say that Payton did not handcuff Trott and they insist that Payton did not physically assault or cause Trott injury.

## II. DISCUSSION

Payton has moved pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment of Trott's excessive force claim. The core judicial inquiry when an inmate alleges that a prison officer used excessive force against him is not whether the officer caused the inmate a certain quantum of injury, but rather whether the officer applied force in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause him harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Payton makes four arguments in support of his motion, but I need only address his contention that summary judgment is mandated because the record discredits Trott's assertion that Payton exerted any force against him.

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As a general rule, the court must "draw all reasonable inferences in favor of

4

the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But, as the Supreme Court held in *Scott v. Harris*, 550 U.S. 372 (2007),

> [a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* at 380 (citations, quotations, and alterations omitted). In *Scott*, the Court held that the Court of Appeals erred in relying on the version of facts offered by the party opposing summary judgment because that version was "clearly contradict[ed]" by a videotape and there were "no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depict[ed] differ[ed] from what actually happened." *Id.* at 378.

5

Like the summary judgment movant in *Scott,* Payton points in this case to video recordings that clearly discredit the version of facts told by the non-moving party. Payton submitted the videos as exhibits to his memorandum filed in support of his summary judgment motion, D.I. 37 and D.I. 38, and he discussed them extensively in that memorandum, D.I. 36. Copies of the video recordings were mailed to Trott months before he filed his answering brief in opposition to Payton's motion. D.I. 37 at 2. Trott does not dispute the authenticity or completeness of the video recordings; nor does he suggest that they depict something different from what actually occurred.[1]

The video recordings make clear that Payton did not handcuff or physically abuse Trott. They show Trott complying with orders to turn around to be cuffed.

---

[1] Lehman averred in a sworn declaration that

> the videos were taken at my order by CERT unit members and provide visual proof substantiating the course of events as described in this declaration. I certify that copies of CD's containing said videos were provided to [Payton's] counsel and are to be provided to the Court as exhibits. . . . I also declare those copies are authentic and true copies of the videos produced on February 19, 2018 at the time and place of the incident made the basis of this lawsuit and accurately recorded the incident in question.

D.I. 36-1 at 12.

6

They show Payton standing next to another officer who handcuffs Trott; and they show that other officer pulling Trott through the slider door after Trott has been handcuffed. They then show Payton escorting Trott from the alcove; and they show Payton quicken his step to catch up with Trott and grab the back of Trott's left elbow for less than two full seconds. This is the only physical interaction between the two men and it could not reasonably be described as constituting even de minimus force, let alone force prohibited by the Eighth Amendment. *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The Eighth Amendment does not protect an inmate against an objectively de minimis use of force"); *Reyes v. Chinnici*, 54 F. App'x 44, 48 (3d Cir. 2002) ("There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically."); *see also Murphy v. Palmer*, 2017 WL 2364195, at *13 (D.N.J. May 31, 2017) ("[N]ot every push, shove or grab constitutes excessive force.").[2]

Because the video recordings so utterly discredit Trott that no reasonable

---

[2] I am happy to have the video recordings speak for themselves. *See* D.I. 38, available in the Clerk of the Court's case file and at
https://www.youtube.com/watch?v=NK_LSqpQJXA
https://www.youtube.com/watch?v=GBjbnX2KN7A
https://www.youtube.com/watch?v=q0yVCsfijes .

7

jury could believe him, I cannot rely on Trott's fictional account of the events of February 19, 2018. *Scott*, 550 U.S. at 380–81. Accordingly, I will grant Payton's motion for summary judgment.

## III.   CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment (D.I. 35).

The Court will enter an order consistent with this Memorandum Opinion.